UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAQUEL SANCHEZ MOLINA (A# 095-799-002),

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

No. 1:26-cv-02137 DJC SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee proceeding through counsel with a habeas corpus action pursuant to 28 U.S.C. § 2241. The assigned District Judge referred the matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. ECF No. 12.

## FACTUAL AND PROCEDURAL HISTORY

### I. Factual Background

Petitioner is a native and citizen of Guatemala who fled the country to escape gender-based violence. ECF No. 1 at 2, ¶ 1. She first came to the United States in April 2009, and Department of Homeland Security ("DHS") officers apprehended her that same day. Fearing removal to Guatemala, and on the advice of smugglers, Petitioner gave DHS a false name and told them she was from Mexico. DHS removed her to Mexico. Id. at 9, ¶ 26. She reentered the United States without inspection in 2010. Id. at 10, ¶ 27; ECF No. 17-2 at 3. Petitioner has

since built a life in the United States and is married with four children, two of whom are U.S. citizens under the age of 10. ECF No. 1 at 10, ¶ 27.

Petitioner briefly returned to Guatemala in 2023 after the deaths of her mother and brother. She reentered the United States without inspection in March 2024 and was apprehended by DHS officers. ECF No. 1 at 10, ¶ 29. On March 7, 2024, DHS reinstated Petitioner's 2009 removal order pursuant to 8 U.S.C. § 1231(a)(5), and released her on an order of supervision ("OSUP") with regular check-ins. Id.

On October 1, 2024, police arrested Petitioner after a disagreement between her and her husband. ECF No. 1 at 10-11, ¶ 31. She was released on bond and no criminal charges were filed. Id. At her check-in on July 15, 2025, Immigration and Customs Enforcement ("ICE") agents revoked Petitioner's OSUP and detained her based on the October 2024 arrest. Id., ¶ 32. An asylum officer subsequently found Petitioner had the requisite reasonable fear of persecution and/or torture in Guatemala, which entitled her to withholding-only proceedings before an immigration judge ("IJ"). Id., ¶¶ 33-34.

On January 21, 2026, Petitioner, represented by counsel, received a bond hearing before an immigration judge ("IJ") pursuant to the now-dissolved injunction in Aleman Gonzalez v. Barr, 955 F.3d 762, 766 (9th Cir. 2020).[1] ECF No. 1 at 11-12, ¶ 35; ECF No. 17-1. The IJ determined the government proved by clear and conceiving evidence that Petitioner was a flight risk and denied bond, writing:

[1] In Aleman, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman, 955 F.3d at 766. The Supreme Court reversed Aleman on other grounds in Garland v. Aleman Gonzalez, 596 U.S. 543, 546 (2022). In a companion case decided that same day, Johnson v. Arteaga-Martinez, 596 U.S. 573 (2022), the Supreme Court rejected the Ninth Circuit's statutory interpretation of § 1231(a)(6), holding "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a detained noncitizen poses a flight risk or a danger to the community." 596 U.S. at 581; see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir. 2022) (recognizing that in Arteaga-Martinez, "the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in Aleman"). The Northern District of California later vacated the preliminary injunction. See Aleman Gonzalez, et al., v. Sessions, et al., No. 3:18-cv-01869 JSC, ECF No. 155 (N.D. Cal., Feb. 3, 2026).

> Respondent is a significant flight risk such that no amount of bond or conditions would ensure her future Immigration Court appearance. Respondent first illegally entered the United States and was subsequently removed in 2009. Despite being removed, Respondent re-entered the United States illegally, and is now in Withholding-Only proceedings.

ECF No. 17-1 at 1. Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which remains pending. ECF No. 1 at 12, ¶ 36. Petitioner's appeal prompted the IJ to issue a memorandum decision on March 9, 2026, that elaborated on the basis for the ruling:

> The Court first finds that the Department has not met its burden to prove that Respondent's release, at this time, would pose a danger to persons or property. Importantly, no argument or evidence was put forth by the Department in this regard. As such, the Court finds Respondent does not present a danger.
>
> The Court further finds, however, that the Department has met its burden to demonstrate that Respondent presents an extreme flight risk, such that no amount of bond could secure her appearance for future proceedings. While the Court acknowledges Respondent's lack of a serious criminal history, the Court finds that her immigration history, and her being in withholding-only proceedings render her such a flight risk such that no amount of bond would secure her future presence in Immigration Court. Respondent was removed in 2009. The record provides that, despite her prior removal, Respondent immediately reentered the United States in 2010. Her immediate reentry demonstrates her complete disregard for the immigration laws. Further, Respondent has limited avenues for relief. Respondent is currently in withholding-only proceedings. Thus, she is subject to a higher burden and must show that she would more likely than not be persecuted or tortured should she return to her home country. Her likelihood of success on her claim, at this juncture, is speculative. Although she has two minor U.S. citizen children, she cannot derive status in the immediate future from any of her family members in the United States. Further, while Respondent has some community ties, Respondent's prior removal and subsequent reentry into the United States significantly militate against her release on bond.

ECF No. 17-2 at 3.

At Petitioner's merits hearing on March 16, 2026, the IJ expressed his intent to deny her applications for withholding of removal under 8 U.S.C. § 1231(b)(3). ECF No. 1 at 12-13, ¶ 37. According to Petitioner's Executive Office of Immigration Review (EOIR) case information

page, the IJ formally denied the applications on March 27, 2026.[2] Petitioner appealed the denials to the BIA on April 24, 2026. That appeal is pending. Petitioner remains detained at the California City Detention Facility within this judicial district. ECF No. 1 at 5, ¶ 13.

**II. Section 2241 Petition and TRO Motion**

Petitioner filed the instant § 2241 petition on March 17, 2026. ECF No. 1. The petition asserts three causes of action: (1) Violation of 8 U.S.C. § 1231(a)(3), (6), based on re-detention absent materially changed circumstances or foreseeability of removal, id. at 29, ¶¶ 88-94; (2) Violation of Fifth Amendment Substantive Due Process, id. at 30, ¶¶ 95-101; and (3) Violation of Fifth Amendment Procedural Due Process, id. at 30-32, ¶¶ 102-109. By way of relief, Petitioner seeks immediate release and an order enjoining Respondents from re-detaining petitioner absent a showing of materially changed circumstances. Id. at 32-33.

Respondents oppose the petition on grounds that Petitioner is lawfully detained pursuant 8 U.S.C. § 1231(a)(6) given her reinstated order of removal. ECF No. 10 at 3. They further assert her constitutional claims fail because the conclusion of her withholding-only proceedings represents a definite termination point for her detention. Id. at 1, 4. Finally, Respondents request the action be dismissed for failure to exhaust administrative remedies.[3] Id. at 2-3. On reply, Petitioner argues that Respondents ignored the statutory and constitutional protections triggered by her March 2024 release on supervision and reiterates that her re-detention without materially changed circumstances violates the statute and Fifth Amendment. ECF No. 11.

Petitioner also filed a motion for temporary restraining order ("TRO") on March 17, 2026. ECF No. 2. The TRO motion tracks the petition's procedural due process claim (Count 3)

---

[2] The undersigned takes judicial notice of Petitioner's EOIR Case Information Page, https://acis.eoir.justice.gov/en/caseInformation. See Fed. R. Evid. 201(b)-(c) (Courts "may take judicial notice on its own" of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[3] The undersigned finds Respondents' exhaustion arguments inapposite. Although Petitioner alleges in her post-TRO brief that the bond hearing was a deficient remedy for her unlawful re-arrest, see ECF No. 14 at 3-6, the petition did not include a claim challenging the outcome of the bond hearing itself that would trigger a prudential exhaustion analysis. See Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011) (holding the petitioner was required to exhaust administrative remedies before asking the federal district court to review the IJ's decision).

and related allegations that Respondents re-arrested Petitioner "without adequately justifying the grounds for re-detention or providing a pre-deprivation hearing before a neutral adjudicator to determine whether circumstances have materially changed since her release . . . in March 2024[.]" ECF No. 2-2 at 3. District Judge Calabretta denied the TRO motion on April 3, 2026, finding that Petitioner had not established a likelihood of success on the merits at that time. "Petitioner may be correct that her initial detention without an appropriate pre-deprivation hearing may have violated her Constitutional rights. However, as Petitioner has now received a bond hearing, it is no longer apparent that there is any relief that the Court can provide." ECF No. 12 at 1. Judge Calabretta referred the matter to the undersigned for further proceedings.

**III. Post-TRO Briefing**

Following Judge Calabretta's referral, the undersigned requested additional briefing on why the TRO order should not dictate the outcome of the merits of the § 2241 petition. ECF No. 13. In her supplemental brief, Petitioner argues that the January 2026 bond hearing did not fulfill her due process rights because it was "legally and constitutionally deficient and reflects the ideological capture of the immigration courts." ECF No. 14 at 3-4. Petitioner claims that despite bearing the burden of proof by clear and convincing evidence, the government submitted no evidence of flight risk and the IJ failed to consider her flight mitigation evidence. Id. at 3-6. Petitioner further argues that the TRO ruling did not reach her statutory claim alleging re-arrest without a showing of materially changed circumstances, as that issue is "distinct from the ones the IJ had authority to decide." Id. at 7-8. Respondents filed a brief response in which they incorporate their prior arguments and submit EOIR policy memoranda to refute Petitioner's assertion of ideological capture. ECF No. 15. At the Court's request, Petitioner later submitted the written decision and transcript from her bond hearing. ECF No. 17.

## DISCUSSION

**I. Petitioner's Statutory Claim**

The detention of noncitizens who are subject to a final order of removal is governed by 8 U.S.C. § 1231(a). Here, it is undisputed that DHS reinstated Petitioner's 2009 order of removal in March 2024 pursuant to 8 U.S.C. § 1231(a)(5). That provision states:

> If the Attorney General finds that a [noncitizen] has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the [noncitizen] is not eligible and may not apply for any relief under this chapter, and the [noncitizen] shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). Because "a reinstated removal order is administratively final," Padilla-Ramirez v. Bible, 882 F.3d 826, 831 (9th Cir. 2017), Petitioner's detention is governed by § 1231(a).

Judge Calabretta's TRO ruling did not address Petitioner's statutory claim, which seeks relief under both § 1231(a)(3) and (6) on grounds DHS re-arrested her without the requisite showing of changed circumstances. While Respondents maintain Petitioner is detained under § 1231(a)(6), by virtue of her release on OSUP, the undersigned instead finds that Petitioner's detention is governed by § 1231(a)(3):

> Respondents acknowledge that the initial 90-day removal period has passed but assert that Petitioner's present detention is valid under 8 U.S.C. § 1231(a)(6). Respondents are mistaken. That provision permits continued detention for certain individuals who are already detained "beyond the removal period[.]" 8 U.S.C. § 1231(a)(6). It does not provide a legal basis to re-detain an individual who has already been released after it was determined that removal was not foreseeable. The decision to revoke Petitioner's release and detain him is thus governed by 8 U.S.C. § 1231(a)(3).

Garcia Bonilla v. Warden, No. 1:26-CV-02765-DJC-AC, 2026 WL 1113880, at *1 (E.D. Cal. Apr. 24, 2026); see also Singh v. Becerra, No. 1:26-CV-00513-DJC-CSK, 2026 WL 569262, at *2 (E.D. Cal. Mar. 1, 2026) (same). Under § 1231(a)(3), when a noncitizen "does not leave or is not removed within the removal period," the noncitizen, pending removal, "shall be subject to supervision under regulations prescribed by the Attorney General."

"Where a noncitizen subject to a final order of removal is out of custody, revocation of their release is governed by 8 C.F.R. § 241.13(i)." Bagat v. Andrews, No. 1:26-CV-00346-DJC-AC, 2026 WL 252240, at *1 (E.D. Cal. Jan. 30, 2026). Petitioner states that she was re-arrested because of her October 2024 arrest. Based on this information, the undersigned treats

Petitioner's re-arrest as a revocation under 8 C.F.R § 241.13(i)(1).[4] That provision states: "Any [noncitizen] who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody[.]" 8 C.F.R. § 241.13(i)(1). DHS must follow certain revocation procedures, including notifying the noncitizen of the reasons for revocation of release and "conduct[ing] an initial informal interview promptly . . . to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Courts have found these regulations to be enforceable in habeas actions. See Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) ("As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.") (quotations and citation omitted).

Respondents generally assert their authority to detain Petitioner pursuant to her reinstated order of removal, but do not attempt to explain why DHS re-arrested Petitioner and submitted no documentary evidence with their answer. Based on the absent justification for the OSUP revocation, the undersigned finds that Petitioner has established a violation of 8 U.S.C. § 1231(a)(3) and its implementing regulations. See Garcia Bonilla, 2026 WL 1113880, at *1 (granting petition where respondents "mention in passing that Petitioner allegedly engaged in criminal conduct for which he was not charged" but did not argue it was basis for re-arrest under 8 C.F.R. § 241.13(i)(1)). Even assuming that Petitioner's arrest could have violated a condition of her OSUP, "there is no indication that Respondents followed the necessary procedures to revoke Petitioner's release by providing h[er] an opportunity to contest that [s]he did not violate h[er] order of supervision." Id.

---

[4] A separate regulatory provision, 8 C.F.R. § 241.13(i)(2), permits revocation "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The undersigned finds that provision inapplicable here where Petitioner claims she was detained because of her October 2024 arrest. Moreover, her pending appeal of the IJ's denial of withholding of removal precludes a finding that she is "stuck in a removable-but-unremovable limbo, as the petitioners in Zadvydas were." Prieto-Romero v. Clark, 534 F.3d 1053, 1063 (9th Cir. 2008) (internal quotation and citation omitted).

The question remains, however, whether the Aleman hearing Petitioner received six months into her re-detention undercuts the relief that she seeks pursuant to § 1231(a)(3) and its revocation procedures. Had the IJ addressed the alleged OSUP violation at the bond hearing (e.g., finding that Petitioner constituted a danger based on her October 2024 arrest), the undersigned might be inclined to find that such post-arrest process precludes further relief at this point. But the transcript of the bond hearing shows that the IJ did not discuss the October 2024 arrest and instead based her flight risk finding on Petitioner's unlawful entry in 2009:

> It does not appear that the Respondent is a danger to the community. There's no conviction records. It is the Department's burden to establish that the Respondent is a danger. I think the sole issue here is whether the Respondent is a flight risk, and I do believe that the Respondent is a significant flight risk such that no amount of bond or conditions would ensure her future court appearance. Of significance is the Respondent's prior—initial reentry back in 2009, and reflecting her removal—or essentially her removal in 2009. There was a removal order in 2009, and then she subsequently returned illegally. And she reentered the United States—based on the sponsorship document reflected in Evidence . . . is that she's known Respondent since 2010. So not only was Respondent removed in 2009, but she immediately reentered approximately a year later.
>
> [….]
>
> To the Respondent, I have considered the totality of the record here, and your attorney has made vigorous arguments on your behalf. Of significance is my concern for you to be respectful of the laws in this country. You illegally entered in 2009, resulting in a removal order, and despite that removal order, you reentered again illegally. It is particularly concerning because the sponsor . . . indicates that she has known you since September of 2010. And so, despite being removed in 2009, you immediately returned to the United States illegally, which is why, because of your prior removal order, you are currently in withholding-only proceedings. And so that is a significant factor, amongst the various factors I have considered in your case, in denying you bond this afternoon.

ECF No. 17-3 at 2-3. Based on this reasoning, and the IJ's written decision which tracks such reasoning, the Aleman hearing concerned issues that were separate and distinct from the revocation of her OSUP and did not provide a comparable remedy for the unlawful revocation of her release.

To be clear, the undersigned has generally agreed with Judge Calabretta's reasoning in the

TRO order that a habeas action does not provide a retrospective remedy where the petitioner received a constitutionally-adequate post-deprivation bond hearing after an unlawful revocation of release or parole. See e.g., Rivas Campos v. Chestnut, et al., No. 1:26-CV-01330 DJC SCR, 2026 WL 1816190, at *7 (E.D. Cal. June 24, 2026), report and recommendation adopted, No. 1:26-CV-01330 DJC SCR, 2026 WL 1899541 (E.D. Cal. July 1, 2026). But here, where the IJ examined events some 15 years before Petitioner's release on OSUP and did not address the alleged OSUP violation that precipitated the revocation of her release, the undersigned cannot say that the bond hearing provided the habeas remedy that Petitioner seeks through her petition. Perhaps most importantly, the IJ's finding of flight risk based on events from 2009 and 2010 cannot represent changed circumstances otherwise justifying Petitioner's current detention where DHS itself released her in March 2024 based on a finding that she did not pose a risk of danger or flight despite those same events from 2009 and 2010. See 8 C.F.R. § 241.4(e) (criteria for OSUP release include that the detainee "is not likely to pose a threat to the community following release," and "does not pose a significant flight risk if released.").

Accordingly, the undersigned recommends that the petition be granted and Respondents be ordered to immediately release Petitioner. Because relief is warranted on Petitioner's statutory claim, the undersigned need not reach her constitutional causes of action.

**CONCLUSION**

Accordingly, it is HEREBY RECOMMENDED that:

1. Petitioner's § 2241 petition for writ of habeas corpus be GRANTED on Count 1 (Violation of 8 U.S.C. § 1231(a)(3)).

2. Respondents be ordered to:

   a. Immediately release Petitioner RAQUEL SANCHEZ MOLINA (A# 095-799-002) under the previously imposed conditions of supervision;

   b. File a Notice of Compliance within three (3) days of any order adopting these findings and recommendations confirming that petitioner has been released from custody. Such notice shall note the exact terms of Petitioner's ongoing conditions of supervision.

3. Respondents shall not seek to revoke Petitioner's supervision unless and until they comply with 8 U.S.C. § 1231(a)(3), 8 C.F.R. § 241.13(i), any other applicable statutes and regulations, and the requirements of due process.

4. The Clerk of Court be directed to:

a. Serve a copy of this order on the California City Detention Facility; and

b. Enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 20, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE